UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HEATHER MCMILLAN NAKAI**, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    Case No. 16-cv-1500 (TSC) <br> ) |
| **RYAN ZINKE**, <br> *In his Official Capacity as Secretary, et al.*, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

## MEMORANDUM OPINION

Plaintiff Heather McMillan Nakai brings this *pro se* suit against the Department of Interior ("DOI") and various DOI employees challenging the Bureau of Indian Affairs ("BIA") denial of her application for Indian Preference. Before the court are Plaintiff's Motion to Complete the Administrative Record (ECF No. 12), Defendants' Motion to Dismiss the Complaint and Lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(1) (ECF No. 13), and Plaintiff's Motion to Strike some of Defendants' arguments from their reply brief in support of the motion to dismiss (ECF No. 20). For the reasons stated below, Defendants' motion to dismiss will be GRANTED and Plaintiff's motion to complete the record and motion to strike will be DENIED as moot.

### I.  BACKGROUND

In March 2013, Plaintiff requested Verification of Indian Preference for Employment with the Bureau of Indian Affairs ("BIA") and the Indian Health Service under 25 C.F.R. § 5.1, both of which extend hiring preference to persons of Indian descent, including, among others, (a) members of recognized Tribes under Federal jurisdiction, (b) their descendants, and (c) "[a]ll others of one-half or more Indian blood of tribes indigenous to the United States." Plaintiff asserted Croatan and

1

Cherokee descent. (Compl. ¶¶ 18, 26). On April 19, 2012, the BIA denied Plaintiff's request, stating that "Lumbee Indians do not constitute a federally recognized Tribe; therefore, the Bureau of Indian Affairs does not have any records of information regarding the Lumbee Tribe to verify your asserted degree of blood." (*Id.* ¶ 18; Ex. 3). Plaintiff appealed to the BIA Eastern Regional Director, who denied her appeal, explaining that "[t]he Lumbee Act precludes the Bureau from extending any benefits to the Indians of Robeson and adjoining counties." (*Id.* ¶¶ 17, 21; Ex. 5). Plaintiff appealed that determination to the Interior Board of Indian Appeals ("IBIA"), arguing that she was seeking Indian preference not on the basis of her Lumbee Indian status, but instead on the basis of having one-half degree or more of Indian blood derived from tribes indigenous to the United States, including the Cheraw, Croatan, and Cherokee tribes. (*Id.* Ex. 6). The Board affirmed the Regional Director's decision on February 27, 2015, stating:

> The fact that Appellant does not rely on her membership in the Lumbee Tribe does not mean that her status as a Lumbee Indian, which is derived from her ancestry, is irrelevant. When Congress precluded the applicability to Lumbee Indians of Federal statutes affecting Indians because of their status as Indians, it prevented Appellant from obtaining rights that she might otherwise have obtained as an "Indian" under Federal law, including "Indian" status for purposes of Indian preference.

(*Id*. Ex. 8).

The IBIA's denial of Nakai's request was based on the DOI's long-standing interpretation of the Lumbee Act, 70 Stat. 254 (1956), "as precluding consideration of a petition from the Lumbee Indians for acknowledgement as an Indian tribe under the Department's *Procedures for Federal Acknowledgment of Indian Tribes*, set forth in 25 C.F.R. Part 83 ('Part 83')." (Mot. to Dismiss at 1; Ex. 1—"M-Opinion"). Under the interpretation of the Lumbee Act at the time of Nakai's application, Nakai was automatically considered Lumbee because she is from Robeson County[1],

---

[1] "The Lumbee Act states: "[T]he Indians now residing in Robeson and adjoining counties

2

regardless of her assertion that she was descended from tribes other than Lumbee Indians. (Compl. ¶ 22). The aforementioned interpretation of the Lumbee Act precluded any person of Lumbee descent, or who was *designated* as Lumbee Indian under the law, from seeking Indian preference. (Mot. at 3). Nakai's application was denied on purely legal grounds, and the factual evidence of her descent was never considered. (*Id*.).

On December 22, 2016, the Solicitor of the Interior issued "Reconsideration of the Lumbee Act of 1956" or M-37040, the M-Opinion, in which he concluded that the language that had previously been interpreted to preclude Lumbee Indians from seeking acknowledgement was actually only intended by Congress to prevent the Act from being read as, in and of itself, conferring on Lumbee Indians eligibility for services and benefits falling within the ambit of federal Indian statutes. (*Id.* at 5). Therefore, reading the Act as precluding a Lumbee Indian from receiving Indian preference was, the Solicitor found, incorrect. The Solicitor explicitly referenced Nakai's case, stating that the IBIA's 2015 decision was inconsistent with *Maynor v. Morton*, 510 F.2d 1254 (D.C. Cir. 1975)—in which the D.C. Circuit found that the Lumbee Act did not require taking away rights that had already been conferred on the plaintiff, although he was Lumbee—and was inconsistent with the Act's legislative history. (*Id*.). The Solicitor noted that she was not bound by the IBIA's interpretation of the Act itself, "and not as it relates to the Part 83 acknowledgment process," in Nakai's case, and concluded that Lumbee Indians "may avail themselves of the acknowledgment process in 25 C.F.R. Part 83," and, "if their application

---

of North Carolina . . . claiming joint descent from remnants of early American colonists and certain tribes of Indians originally inhabiting the coastal regions of North Carolina, shall . . . be known and designated as Lumbee Indians of North Carolina." 70 Stat. at 255.

is successful, they may then be eligible for the programs, services, and benefits available to Indians because of their status as Indians." (*Id.* at 18-19).

Nakai's application was subsequently remanded to the Regional Director of the BIA and the Indian Health Service for reconsideration consistent with the Solicitor's Memorandum. (Defs. Mot.; Ex. 2, "Remand Memorandum"). The remand memorandum, dated December 28, 2016, directed the Regional Director to "reconsider Ms. Nakai's request for Verification of Indian Preference for Employment in the Bureau of Indian Affairs and the Indian Health Service, in particular, whether Ms. Nakai qualifies for Indian preference pursuant to 25 C.F.R. § 5.1(c), notwithstanding her status as a Lumbee Indian and her descent (in whole or in part) from the Indians who were designated as 'Lumbee Indians' by the Lumbee Act." (*Id.*). On the same date, Defendants moved to dismiss this case based on mootness. Plaintiff argues that her complaint is not moot and that "Defendants' alleged reconsideration is pretext that allows the Defendants to escape liability for their unlawful action without providing [Plaintiff] with relief." (Opp'n. at 1). She also moves to strike arguments made by the DOI on Reply.

## II. LEGAL STANDARD

A motion to dismiss for mootness is properly brought under Federal Rule of Civil Procedure 12(b)(1), which requires that a court establish subject matter jurisdiction before hearing a case. *See Young v. D.C. Hous. Auth.*, 31 F. Supp. 3d 90, 94 (D.D.C. 2014). The Rule imposes "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Id.* at 94-94 (quoting *Jones v. Ashcroft*, 321 F. Supp. 2d 1, 5 (D.D.C. 2004)). Mootness carries jurisdictional significance, as the "case or controversy" requirement of Article III restricts courts to adjudicating "actual, ongoing controversies." *Honig v. Doe,* 484 U.S. 305, 317 (1988).

4

An actual controversy may become moot if some intervening event ends the controversy, such that "the issues presented are no longer 'live.'" *Larsen v. U.S. Navy,* 525 F.3d 1, 3–4 (D.C. Cir. 2008) (quoting *Cnty. of L.A. v. Davis,* 440 U.S. 625, 631 (1979)). If events have so transpired that the original controversy is no longer active, then the court's jurisdiction is eliminated, because "there is nothing for [the court] to remedy, even if [it] were disposed to do so." *Spencer v. Kemma,* 523 U.S. 1, 18 (1998).

However, when the intervening event that ends the case is the defendant voluntarily changing its challenged conduct, the case is not automatically considered moot. *See Cnty of L.A.*, 440 U.S. at 631. Otherwise, "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves his unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Although the "actual, ongoing controversy" standard identified in *Honig*, 484 U.S. at 317, is generally sufficient for determining whether a case is moot, "the standard . . . for determining whether a case has been mooted by the defendant's voluntary conduct is stringent." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 170 (2000). If the party claiming mootness can demonstrate that (1) "there is no reasonable expectation" that the challenged activity will reoccur, *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953), and (2) and interim events completely eradicate the effects of the alleged violation, then the court may find that the case is moot. *See, e.g.*, *Doe v. Harris,* 696 F.2d 109, 111 (D.C. Cir. 1982) (citing *Cnty. of L.A. v. Davis,* 440 U.S. at 631).

### III. ANALYSIS

#### A. Motion to dismiss

The court is persuaded that there is no live controversy here. Plaintiff's lawsuit is brought under the Administrative Procedure Act ("APA"), under which a district court may review agency action and "hold unlawful and set aside agency action, findings, and conclusions found to be . . .

5

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The court's review of agency action is limited to the record before the agency. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985) ("The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court."). Because the IBIA's denial of Plaintiff's application for Indian preference was based only on its interpretation of the Lumbee Act, and that interpretation subsequently changed, there remains nothing for this court to review in light of the agency remand. The only relief this court could order would be a remand requiring the agency to consider Plaintiff's application based on her Indian heritage pursuant to section 5.1(c); that is exactly the outcome of the agency's own remand. *See id.* at 744 ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."); (Defs. Mot. to Dismiss Ex. 2 at 2).

Plaintiff contends that the interpretation of the Lumbee Act was "a secondary justification" for her application's denial; the primary being the arbitrary and capricious denial of her application generally. (Opp'n at 4). She asks the court to order Defendants to add materials to the administrative record, including the Census records she included with her application documenting her Indian heritage. (*Id.* at 1; Mot. to Complete Record, ECF No. 12). But it is not this court's role to decide in the first instance whether Plaintiff has the requisite Indian heritage to be eligible for Indian preference; it is the agency that must do so, and the Regional Director has already been so ordered. Supplementing the administrative record with factual information about Plaintiff's descent will not empower this court to review anything other than the agency's 2015 legal determination

6

that Plaintiff's Lumbee status precludes her eligibility on section 5.1(c) grounds. Plaintiff argues that because the original denial by the BIA noted that the Bureau did not have records pertaining to her Indian heritage, the agency in fact already considered her 5.1(c) grounds for eligibility, but the remainder of the record, and the administrative appeal, demonstrate that the denial was purely legal. The Bureau indicated that its decision was because Plaintiff is Lumbee, not because the materials Plaintiff submitted were inadequate.

The court finds that Defendants meet the requirements for a voluntary cessation mootness dismissal. First, there is no reason to believe the agency will again reject Plaintiff's application on the same legal grounds. There is no indication that the M-Opinion's reinterpretation of the Lumbee Act is temporary or at risk of being reversed, and a court may not consider a mootness challenge based solely on the mere possibility of the reinstatement of the challenged activity. *See Native Village of Noatak v. Blatchford,* 38 F.3d 1505, 1510 (9th Cir.1994) (denying a mootness challenge in the absence of "virtual certainty" that a legislature would reenact the statute after the case was dismissed). Second, the effect of the agency's prior interpretation of the Lumbee Act has been completely eradicated by the agency's changed interpretation. Plaintiff will have her application considered based on her Indian descent in accordance with section 5.1(c), and her opposition concedes as much, as she indicates that the relief she seeks is this court's prohibiting the agency from "denying service to [her] because of her political affiliation with the Lumbee Tribe." (Opp'n at 2). The M-Opinion and the agency's internal remand memorandum indicate that on remand, Plaintiff will not be denied preference because of her Lumbee affiliation.

Plaintiff also argues that the possibility that the court "could award [her] relief in equity including the costs, fees, and expenses she has paid out-of-pocket," (*id.*), prevents the case from

7

being moot, since fees constitute additional relief that the remand does not provide. The court finds otherwise.

The Equal Access to Justice Act, 28 U.S.C. § 2412, allows a court to award attorney fees to a "prevailing party" in any civil action brought by or against the United States or any agency of the United States if the government's position is not "substantially justified." In order to be considered a prevailing party, there must be a final outcome that directly benefits the claimant; an ongoing remand is insufficient. *See Cooper v. U.S. R.R. Retirement Bd*, 24 F.3d 1414, 1416 (D.C. Cir. 1994) (quoting *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) ("Where a court's remand to the agency for further administrative proceedings does not necessarily dictate the receipt of benefits, the claimant will not normally attain 'prevailing party' status . . . . until after the result of the administrative proceedings is known.")). If the court were to order a remand, then, Plaintiff would not be considered a "prevailing party" unless and until she were granted Indian preference.

Even if the court ordered a remand, and Plaintiff ultimately obtained Indian preference, she might be a "prevailing party" but she nonetheless would not be entitled to attorney fees. A court may only award attorney fees to a prevailing party if the court also concludes that the position of the United States was not "substantially justified," such that its action would not "satisfy a reasonable person." 28 U.S.C. § 2412(d)(1)(A) (1988); *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). If the United States' position is found to be substantially justified, even a prevailing party will be denied attorney fees. *See Hill v. Gould*, 555 F. 3d 1003, 1005 (D.C. Cir. 2009) (denying the claimant's request for attorney's fees because Solicitor of the Interior's denial of an application for protection of the mute swan was substantially justified and her interpretation of the Migratory Bird Treaty Act was reasonable). The agency bears the burden of establishing that a position was substantially justified. *Lundin v. Mecham*, 980 F.2d 1450, 1459 (D.C. Cir. 1992).

Here, although the Solicitor of the Interior herself criticized the DOI's vacillating interpretation of the Lumbee Act, (M-Opinion at 18), that interpretation at the time Defendants' denied Nakai's application was nevertheless substantially justified. The DOI's position was based on memoranda prepared by the Assistant Solicitor's *1989 interpretation of Lumbee Act*, precluding Lumbee Indians, or those designated as Lumbee Indians, from seeking preference under the Department's *Procedures for Federal Acknowledgement of Indian Tribes*, set forth in 25 C.F.R. Part 83. (M-Opinion at 8).

While the Assistant Solicitor's interpretation of the Lumbee Act was subsequently found to be "flawed" by the Solicitor's 2016 Reconsideration, the Department cannot be faulted for relying on what was then the standard interpretation of the Lumbee Act, and this reliance constitutes a sufficient basis for Defendants' position. Therefore, even if Plaintiff were to become a prevailing party, she would nevertheless not be entitled to attorney fees because the agency's position was substantially justified. The potential for an award of fees and costs does not prevent dismissal of the Complaint based on mootness.

### B. Motion to strike

Plaintiff asks the court to strike what she perceives as new arguments raised by Defendants in their reply brief. These include (1) "Defendants' assertion that the challenged activity is limited to a newly identified prior legal interpretation;" (2) "Defendants' assertion that the M-Opinion and subsequent memorandum superseded the IBIA decision and remanded Ms. McMillan Nakai's application to the Regional Director for review;" (3) "Defendants assertion that they were not obligated to consider the entire Administrative Record when making their decision;" (4) "Defendant's assertion that Ms. McMillan Nakai is not entitled to the benefits of the Equal Access to Justice Act." (Mot. to Strike at 4; ECF No. 20).

9

Although "[t]here is no bright-line rule to determine whether a matter has been properly raised," *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 222 (D.C. Cir. 1991), in general, arguments made only in reply briefs are typically forfeited. *See Pardo-Kronemann v. Donovan*, 601 F.3d 599, 610 (D.C. Cir. 2010); *see also Herbert v. Nat'l Acad. Of Scies*., 974 F.2d 192, 196 (D.C. Cir. 1992). However, that is not the case here. Three of the four arguments that Nakai cites as "new" were in fact included in the DOI's motion to dismiss; the fourth is merely an amplification of an argument presented in the motion to dismiss.

First, the DOI's motion to dismiss clearly states the basis of Nakai's automatic denial of eligibility as the prior legal interpretation of the Lumbee Act. (Defs. Mot. at 3). Second, the DOI's motion cites the M-Opinion and subsequent remand as the basis for mooting Nakai's case. (*Id*.). Third, the DOI's motion explains why the Administrative Record does not include Nakai's documents pertaining to her descent. (*Id*. at 4).

Fourth, Defendants' mention of the Equal Access to Justice Act is not a new argument, but a response to Plaintiff's contention that her eligibility for attorney fees precludes a finding of mootness. The DOI's reference to the Equal Access to Justice Act merely indicates the statutory basis under which Nakai would have had to seek fees and costs. (Reply at 11) ("Presumably, Plaintiff would seek an award . . . pursuant to the Equal Access to Justice Act."). The reference is consistent with the DOI's argument in the motion to dismiss that the only available relief to Nakai at that point in the litigation was remand. The reference does not qualify as a new argument, but rather is better characterized as an "amplification" of the DOI's initial response. *See Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187 (D.D.C. 2012 (citing *Glass v. LaHood*, 786 F. Supp. 2d 189, 231 (D.D.C. 2011)) (finding that an amplification of an existing argument, so long as it does not raise new arguments or issues for the first time, is not an impropriety)).

10

Additionally, Plaintiff's decision to move to strike rather than request an opportunity for sur-reply indicates that what she seeks is not an opportunity to respond to the allegedly new arguments, but instead a procedural means of dismissing Defendants' successful arguments. Moreover, even striking the entire reply would not change the outcome here. Mootness is jurisdictional, and cannot be waived through failure to properly raise.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss will be GRANTED. Plaintiff's motion to complete the record and motion to strike will be DENIED.

A corresponding order will issue separately.

Dated: August 23, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge